1822.

In matter of M'CLEAN.

the great injury of the plaintiffs, as owners of lots on and adjoining that street, and that *Vestry-street* has been laid out, regulated, and paved, for about twenty years.

*C. Graham*, for the motion.

## In the Matter of P. M'CLEAN, a Lunatic.

On the petition of a lunatic, for the discharge of his committee, on the ground of returned sanity, it is in the sound discretion of the Court, to allow him to traverse the inquisition, or to try the question on a feigned issue; and, where the lunacy was satisfactorily established, in the first instance, and the opinion of the Court, after repeated applications of the party for a discharge of his committee, remained unchanged, the trial of the question was directed to be at the expense of the lunatic, or his friends, and not at the charge of his estate, which consisted of personal property only, acquired by the industry and skill of his wife, and barely sufficient for the maintenance of herself and children, and of her husband.

*December 9th.*   ON the 4th of *May*, 1821, the petition of *Mary M'Clean*, of *Hudson*, was presented to the Court, stating, that her husband, *Peter M'Clean*, then was, and, for several years before, had been deprived of his reason, so as to

be unfit to govern himself, or manage his affairs, and praying for a commission of lunacy.

*A. L. Jordan*, in support of the petition, read the affidavits of four persons, stating their acquaintance with *P. McClean* for many years, and his behaviour, words, and actions, at various times, from which they considered him as insane. That he had been confined, several times, on account of his lunacy, at *H.*, and at the hospital in the city of *New-York;* and, from the numerous instances of his strange and inconsistent conduct and conversations, some of which were related, they had no doubt of his lunacy.

A commission of lunacy was, accordingly, issued, directed to *Elisha Jenkins, James Strong, Joseph D. Monell, James Hyatt,* and *Rufus Reed,* of *Hudson.* And an *inquisition* was taken in the presence of the three commissioners first named, on the 10th of *May,* 1821, and signed by them and twenty-two jurors, finding *P. M.* a lunatic, and that he had been a lunatic for eleven years past, and upwards. That he never owned any real property. That his personal property, nearly all of which had been acquired by his wife, since his lunacy, by her industry and skill, in managing a shop of dry goods and millinery, in *H.*, amounted to about 1300 dollars. That she has the charge of her three younger children, and has provided principally for their support; and that he had a daughter, by a former wife, who had lately died, leaving three children, &c.

The inquisition was filed the 25th of *June,* 1821, and *Robert A. Barnard,* and *John Tallman,* of *H.*, were appointed a *committee* of the person and estate of the lunatic; and, on the 7th of *July* following, a recognisance, with surety, in the sum of 1500 dollars, was taken and filed. On the 7th of *December,* 1821, the committee filed an inventory of the property of the lunatic, under oath, by which it appeared, that the total amount of his personal

estate, after deducting debts, amounted to 2386 dollars and 8 cents, which consisted chiefly of the goods in the shop, and that the wife, by her industry and management of it, might maintain the lunatic and her family.

*January* 10, 1822.   Application was made, in behalf of the lunatic, to discharge his committee, on the ground of his returned sanity.   Numerous affidavits, which had been previously served on the committee, were read in support of the petition.   The committee produced a great number of affidavits, of very respectable persons, who had known the lunatic and his family for fifteen years past, all of whom stated their belief of his continued insanity eleven years past, and that he was, at present, unfit to have the control of his property.   Three respectable physicians of *H.* stated, that they had known the lunatic for more than ten years past, and frequently attended him, and were clearly of opinion, that he had been and was insane.

THE CHANCELLOR granted an order, declaring, that the proof of the returned sanity of *M.* was utterly insufficient and fully contradicted, and the proof of his lunacy entirely satisfactory; and that it was confirmed by conversation with him; and that the motion was, therefore, denied.

*May* 7, 1822.   The petition of the lunatic was again presented, stating, that he was of sound mind, and praying that the committee of his person and estate might be discharged.   This petition was accompanied with the affidavits of above *forty* persons, residing in *Albany*, all of whom stated, that they had been acquainted with *M.*, some for several years, others for five or six weeks, and others since *November* last; and that they had not seen or discovered any insanity.

THE CHANCELLOR. I am still of opinion, that the petitioner is in a state of confirmed and unchanged lunacy; yet, in order to give satisfaction to those persons who appear to entertain a different opinion, I will give the petitioner an opportunity to traverse the former inquisition, or to try the question of returned sanity, upon a feigned issue. The granting the one or the other, no doubt, rests in sound discretion; and, as the estate of the lunatic was acquired by the industry and prudence of the wife, and is necessary for the maintenance of her and her children, as well as of her husband, he ought not, in a case in which the lunacy was so satisfactorily established, in the first instance, and appears to be of such an inveterate and obstinate nature, to have a trial, at the expense of the property, which is nominally in the hands of the committee, though, in fact, by their judicious arrangement, under the actual superintendance of the wife. If he succeeded to make out his sanity, and the committee should be discharged, the petitioner would, of course, be enabled to defray the expense out of the estate. But, if it should be otherwise, the experiment, in a case so strongly marked, and in which my judgment, on the proof, is so decidedly against him, ought to be made at his own expense, or with the aid of such persons, as appear to take an interest in his favour. To allow a traverse, or issue, at the charge of the estate of the lunatic, would be liable to abuse, for he would always be able to procure any kind of assistance, and maintain a ceaseless litigation, when resort could be had to the funds in the hands of his wife. I ought not to permit them to be exhausted in litigation, without some solid grounds, or contrary to my own judgment and convictions.

I shall, accordingly, direct, that a traverse, or feigned issue, under the direction of his counsel, be made up and prepared, in conjunction with the committee, according to the course and practice of the Court, to try the question, whether *Peter M'Clean* be a lunatic, or of unsound mind,

and mentally incapable of managing his affairs; and that it be tried at the next *Columbia* Circuit, but at the expense of the petitioner; and that the cost and expense thereof be not charged against his estate, which is in the hands, or under the control of the committee.

Order accordingly.

*November* 12,, 1822. The petition of the lunatic was again presented, praying that the commission might be superseded. The petition was accompanied with the affidavits of *twenty-nine* persons, deposing generally, from a short and recent acquaintance with the petitioner, that they do not discover any marks or evidence of insanity.

*December* 9. THE CHANCELLOR made an order to the effect of the one of the 7th of *May* last, and declared, that the reasons stated in that order, why the petitioner should be relieved only on the terms mentioned in the order, still existed; and that, after the confirmed and inveterate lunacy of above eleven years, and fatal to the peace and interest of his wife and children, it would be unjust, and contrary to the duty of the Court, to grant relief, except upon the terms stated in that order.

Order accordingly.